UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARIE L. BORGESE, et al., )<br>  )<br>       Plaintiffs, )<br>  )<br>v. )<br>  )<br>AMERICAN LUNG ASSOCIATION )<br>OF MAINE, )<br>  )<br>       Defendant. ) | Docket no. 05-CV-88-P-S |

**ORDER ON PLAINTIFFS' MOTION TO REMAND**

SINGAL, Chief District Judge

Before the Court is Plaintiffs' Motion to Remand (Docket # 6) for lack of federal question jurisdiction. For the reasons set forth below, the Court GRANTS Plaintiffs' Motion to Remand.

### I.  FACTUAL BACKGROUND

Plaintiffs Marie L. Borgese and Sharon A. Gleason filed this action on April 8, 2005, in Kennebec Superior Court alleging that their former employer, the American Lung Association of Maine ("ALAME"), violated their rights under the Maine Human Rights Act, 5 M.R.S.A. § 4612(2), by terminating their employment on the basis of age. They sought an order requiring Defendant to cease and desist from age discrimination, as well as reinstatement with back pay and benefits, compensatory and punitive damages, and fees and costs. On May 4, 2005, apparently in furtherance of prior communication between the parties, Plaintiffs' counsel sent Defense counsel a letter elaborating upon Plaintiffs' claims. In this letter, Plaintiffs' counsel stated that the evidence suggested Plaintiffs were terminated "because of their age and/or the fact that

1

their 'health issues' were adversely affecting the Association's medical insurance premiums."  (Letter from Daniel J. Stevens, Esq. to Melinda J. Catherine, Esq. (May 4, 2005) (Ex. A to Docket # 1) (hereinafter "May 4, 2005 Letter").)

Defendant accepted service of the complaint on May 10, 2005.  On May 11, 2005, Defendant filed a Notice of Removal, arguing that Plaintiffs' claims were protected under section 510 of the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. §1140.  (Notice of Removal (Docket # 1) ¶ 4).  Defendant argued that Plaintiffs' claims were therefore redressable under ERISA section 502(a), and that the action could be removed under the doctrine of complete preemption.  Plaintiffs filed a Motion to Remand on June 8, 2005, in which they denied that their claims fell within ERISA.  This Motion is now fully briefed, including the filing of a sur-reply by Defendant, and the Court has considered all of the arguments presented in the parties' various submissions.

## II.   DISCUSSION

Plaintiffs' Motion to Remand requires the Court to first determine whether documents outside the Court's official record, namely a letter sent by Plaintiffs' counsel to Defendant's counsel, may be considered in the context of deciding whether Plaintiffs' case may be removed to federal court.  Next, the Court must consider whether Plaintiffs' state law claims against their former employer for age discrimination must be recharacterized as stating a federal question under section 502(a) of ERISA, 29 U.S.C. § 1132(a).  If the Court finds such a federal question, it must go on to determine whether these state law claims are in fact preempted by section 502(a) of ERISA, 29 U.S.C. § 1132(a).

2

### 1. Removal Based on Initial Complaint

Under the doctrine of complete preemption, any state law claim that "relates to" an ERISA employee benefit plan is removable to federal court. 29 U.S.C. § 1144(a). Pursuant to 28 U.S.C. § 1446(b), a defendant may remove a case to federal court, within thirty days of receipt or service of the Complaint, based solely on this initial pleading. In this case, Plaintiff's Complaint stated only that the Plaintiffs were terminated "as a result of [their] age." (Compl. (Docket # 1) ¶ 8 & 15.) Thus, the Complaint, on its face, solely claimed violations of Maine law against age discrimination.

Defendant has not suggested that simple claims of age discrimination provide a basis for removal under ERISA. Rather, Defendant points to the May 4, 2005 Letter as its basis for seeking removal. Because this letter references "health issues" and other issues relating to ERISA-covered benefits plans, Defendant asserts that the May 4, 2005 Letter demonstrates that Plaintiffs' claims actually relate to the type of benefits discrimination preempted by ERISA. (Def.'s Sur-Reply (Docket # 15) ¶ 3.) In short, although Defendant removed within thirty days of receiving the Plaintiff's Complaint, the removal is not based solely on the Complaint.

### 2. Removal Based on Other Papers

Before tackling Defendant's complete preemption arguments, the Court must first address Defendant's problematic reliance on the May 4, 2005 Letter.

The relevant portion of 28 U.S.C. § 1446(b) reads:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

At best, the May 4, 2005 Letter that Defendant relies on for removing Plaintiffs' claims is an "other paper." However, if this letter does not qualify as an "other paper," it is far from clear that Defendant had a basis for seeking to remove this case from state court.

The First Circuit has not yet clearly defined "other paper," nor has it addressed whether a letter sent informally between counsel for parties could constitute an "other paper." The presumption among trial courts within the Circuit, however, is that the drafters gave the examples of "amended pleading, motion, order" as a "way of describing the kinds of papers they had in mind." Mill-Bern Assocs. v. Dallas Semiconductor Corp., 69 F. Supp. 2d 240, 243 (D. Mass. 1999). In that context, "'other paper' is not merely some 'other written-down information.' Rather, an 'other paper' is one that somehow matches and fits with the preceding 'papers' listed, because it is similar to them." Id. The court in Mill-Bern went on to note that in other contexts, such as within the Federal Rules of Civil Procedure, "paper" refers to documents that are "formally filed and served." Id. At least one district court has explicitly held that "mere correspondence between counsel for plaintiffs and defendant is not sufficient to bring plaintiffs' correspondence into the definition of 'other paper' as set forth by the courts above." Bonnell v. Seaboard A. L. R. Co., 202 F. Supp. 53, 55 (D. Fla. 1962). Although "other papers" are not required to be formally filed before the court, in the rare cases where correspondence between parties has been deemed to constitute an "other paper," the correspondence has generally confirmed recent filings or given warning about upcoming filings. Parker v. County of Oxford, 224 F. Supp. 2d 292, 294-95 (D. Me. 2002).[1]

---

[1] These cases include Broderick v. Dellasandro, 859 F. Supp. 176 (E.D. Pa. 1994) (attorney's letter advising of client's changed residence that created diversity jurisdiction was "other paper"), and Hessler v. Armstrong World Indus., Inc., 684 F. Supp. 393 (D. Del. 1988) (counsel letter constituted "other paper" when it accompanied statements in court and confirmed settlement by non-diverse parties).

In the Court's assessment, the May 4, 2005 Letter does not fall within the guidelines established to define "other paper." The letter did not give notice of a material change, such as a change in party diversity or amount in controversy, to opposing counsel. It did not precede or accompany a court filing. It appears to be a courtesy letter sent by the Plaintiffs' counsel as part of ongoing settlement negotiations, and does not rise to the level of an "other paper" as contemplated by 28 U.S.C. § 1446(b).

### 3. Artful Pleading Doctrine

Even if this court were to consider the May 4, 2005 Letter as an "other paper," there would still be no basis for removal to federal court. Defendant claims that there is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(a), and seeks removal pursuant to 28 U.S.C. § 1441. Both parties agree that there is no basis for removal under the well-pleaded complaint doctrine, as Plaintiffs' discrimination claim is on its face based entirely on the Maine Human Rights Act. Under the well-pleaded complaint rule, federal question jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983).

While a defendant cannot "inject[] a federal question into an action that asserts what is plainly a state-law claim" in order to establish federal jurisdiction, Caterpillar v. Williams, 482 U.S. 386, 399 (1987), there is an exception to the well-pleaded complaint rule. The complete preemption doctrine, an "independent corollary" to the well-pleaded complaint rule, can "convert[] an ordinary state common law complaint into one stating a

5

federal claim." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987). Complete preemption occurs when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 63–64. If a complaint asserts a state law claim pertaining to an area of law that has been completely preempted, "any such suit must be regarded as purely a creature of federal law." BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997). Any claim brought under state law that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" falls under the doctrine of complete preemption. Aetna Health Inc. v. Davila, 542 U.S. 200, ____, 124 S. Ct. 2488, 2495 (2004).

Complete preemption "propels a significant exception to the well-pleaded complaint rule — the artful pleading doctrine." BIW Deceived, 132 F.3d at 831. Under the artful pleading doctrine, the court must "look beneath the face of the complaint" in order to determine whether complete preemption renders a plaintiff's claims truly federal in nature.[2] Id. If the court so finds, it must "recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state-law claims." Id.

The issue is therefore whether, under the artful pleading doctrine, the Plaintiff's Complaint substantively seeks "relief that is otherwise within the scope of those ERISA remedy provisions." Hotz v. Blue Cross & Blue Shield of Mass., 292 F.3d 57, 59 (1st Cir. 2002). The Supreme Court has found that "a law 'relates to' an employee benefit

---

[2] Defendant assumes that the Court's review of correspondence between counsel, such as the May 4, 2005 Letter, falls well within the type of review contemplated under the artful pleading doctrine. However, in the Court's assessment, it is simply not clear that looking beyond the face of the complaint requires the review of items that are not otherwise part of the official docket. Nonetheless, because the Court reaches the same result even after considering the text of the May 4, 2005 Letter, it need not decide the more difficult question of whether the artful pleading doctrine allows or requires the review of such correspondence. Nonetheless, the Court notes that absent the May 4, 2005 Letter, there would be absolutely no basis on the record for recharacterizing Plaintiffs' Complaint as stating claims under ERISA.

plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990), citing Shaw v. Delta Air Lines, Inc., 463 U.S. 84, 96-97 (1983).

Some cases brought under state anti-discrimination laws have more directly related to benefits plans, and federal courts have easily decided to allow those cases to be removed. In one example, the Supreme Court allowed removal where employees sought pregnancy benefits mandated under New York state, but not federal, law. Shaw, 463 U.S. 84.

Likewise, in Fitzgerald v. Codex Corporation, 882 F.2d 586 (1st Cir. 1989), the First Circuit allowed removal in a case where an employee claimed he was fired because his ex-wife was making claims under the employer's medical plan. The employee was subjected to strong and sometimes flagrant pressure to remove his ex-wife from the plan, and he claimed that his failure to do so led to his dismissal. Id. at 589. The court specifically allowed for removal in cases where the employer alleged that they were fired in retaliation for making claims under a benefits plan, as that type of "wrongful interference by the employer" is specifically prohibited under ERISA, and therefore relates to it. Id. at 589-90.

Unlike in Fitzgerald, there is no suggestion that Plaintiffs' discharge was in retaliation for or, for that matter, even flowed from, Plaintiffs taking affirmative steps to exercise their rights under the plan. Plaintiffs also do not claim they were discharged for the purpose of interfering with an ERISA benefit right. They contend that they were fired because of their age.

7

There are some limitations of ERISA's preemptive powers and courts have been understandably hesitant to allow removal in cases where the claim does not clearly and directly relate to an ERISA benefit plan.  In Warner v. Ford Motor Co., 46 F.3d 531 (6th Cir. 1995), the Plaintiff sued in state court under Michigan age discrimination laws, claiming that his employer forced him to take early retirement by threatening to discharge him because of his age.  Id. at 534.  The Sixth Circuit found that there was no preemption and remanded the case to state court.  It ruled that the case was "a straight state age discrimination case which has no counterpart or superseding cause of action in ERISA.  It is an action to set aside and escape from the early retirement agreement, not to recover under it or to 'enforce' it or to assert 'rights to future benefits under the terms of the plan.'"  Id.

A recent decision from the Southern District of New York, Nuzzo v. Verizon New York, Inc., 2004 U.S. Dist. Lexis 16585 (S.D.N.Y. 2004), similarly found that an age discrimination suit brought under New York state law is not preempted under ERISA.  Rather, the Court found that the plaintiff sought relief solely on basis of age discrimination, and "the existence of an ERISA plan is at best incidental to this dispute."  Id. at *13.  The court emphasized that "Nuzzo is not seeking to recover benefits under ERISA or to challenge the quality of his retirement benefits under Verizon's ERISA plan," and his claim was therefore simply an age discrimination claim and was not removable. Id. at *14.

In reaching this conclusion, the district court distinguished the plaintiff's age discrimination claim from cases like Ingersoll-Rand or Harris v. Michigan Consol. Gas Co., 117 F. Supp. 2d 642 (E.D. Mich. 2000), in which the plaintiffs claimed that their

8

employers had fired them specifically to avoid paying the plan benefits to which they were entitled. Nuzzo, 2004 U.S. Dist. Lexis, at *11-13. Unlike the plaintiff in Ingersoll-Rand, the court determined that Nuzzo's age discrimination claim was made pursuant to a generally applicable state anti-discrimination law that was not premised on the existence of an ERISA plan. Id. at 13. And unlike the plaintiff in Harris, Nuzzo did not claim that his employer's sole motivation for firing him was to avoid paying the benefits. Id. at *13-14. In fact, Nuzzo's complaint did not allege that he was constructively discharged solely or even principally because his employer wished to avoid paying him benefits under its ERISA plan. Ultimately, the district court determined that Nuzzo's action would exist even if Verizon did not maintain an ERISA plan.

In an earlier case, a district court in Kentucky found it significant that a terminated employee sought reinstatement, which it did not see as equivalent to seeking to recover plan benefits, enforce rights under the plan, or clarify future rights under the plan. Drescher v. Union Underwear Co., 858 F. Supp. 653, 657 (W.D. Ky. 1994). It also noted that a desire to cut future pension costs most likely underlies all age discrimination claims, but did not find that enough to convert all such claims into federal ERISA actions. Id.

At most, the case at hand involves the possibility of mixed motives, in which an employer both engaged in age discrimination and desired to avoid paying plan benefits. In Kiedaisch v. Nike, Inc., 2004 U.S. Dist. LEXIS 2828 (D.N.H. 2004), the plaintiff claimed that the employer fired him because of his age, but speculated in a deposition that the employer may also have fired him to avoid paying his pension benefits. Id. at *9. On the basis of that deposition testimony the defendant sought to remove. The court

9

noted the "absence of controlling authority on the point in this circuit," Id. at *16, but ultimately found that "there is simply no evidence to support a claim that defendants were motivated by a specific intent to avoid their pension obligations to him." Id. at *10. The Plaintiff's speculation was not enough for removal. It also noted that seeking lost benefits under a pension plan is not enough to remove a claim to federal court. Id. at *8.

In this Court's assessment, Plaintiffs' claims are substantially similar to the claims brought in Warner, Nuzzo, Drescher and Kiedaisch and, therefore, are not subject to complete ERISA preemption. On this basis, the Court concludes that there is no basis for removal.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Remand (Docket # 6).

/s/ George Z. Singal
United States Chief District Judge

Dated the 17th day of October, 2005.